Hawk et ux. v. Pennsylvania R. R., Appellant.

Argued September 30, 1931. Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*Harry C. Golden,* for appellant.—Plaintiff was guilty of contributory negligence: Kolich v. Ry., 303 Pa. 463; Lunzer v. R. R., 296 Pa. 393; Winner v. Mellon, Director General, 287 Pa. 288; Mensch v. Director General, 274 Pa. 356; Radziemenski v. R. R., 283 Pa. 182; Grimes v. R. R., 289 Pa. 320; Weber v. Ry., 300 Pa. 351; Joseph v. Ry., 294 Pa. 315; Miller v. R. R., 299 Pa. 63; Massinger v. R. R., 300 Pa. 6; Rhodes v. P. R. R., 298 Pa. 101; Haskins v. P. R. R., 293 Pa. 537.

*E. O. Golden,* with him *John W. Rohrer,* for appellees. —The case was for the jury: Frank v. Reading Co., 297 Pa. 233, 240; Shaffer v. R. R., 258 Pa. 288, 290; Kauffman v. R. R., 237 Pa. 227, 228; Howard v. R. R., 219 Pa. 358, 360; Rottmund v. R. R., 225 Pa. 414; Muskinhaupt v. R. R., 196 Pa. 217; Seigel v. R. R., 67 Pa. Superior Ct. 310; Smyth v. Traction Co., 263 Pa. 511, 516; Mills v. R. R., 284 Pa. 605, 608; Schaeffer v. Transit Co., 302 Pa. 223; Klingensmith v. Rys., 303 Pa. 487, 492.

OPINION BY MR. JUSTICE MAXEY, January 11, 1932:

This is a grade crossing case. Plaintiffs are husband and wife. Defendant company had a double track railroad running north and south in the Borough of Manorville. Mill Street runs east and west across these tracks. Mrs. Jennifer Hawk, aged thirty-two, coplaintiff, was driving on this street on a clear morning at 8:25 in an easterly direction across these tracks. She was not a licensed driver, but had a learner's permit, and Wilbert Schall, a licensed driver, was sitting at her side in the front seat of the automobile. Her testimony is that

when she got near the Mill Street crossing she went into low gear, as there was a "very sharp grade up" to the crossing and that she stopped at the usual stopping place near that crossing, and listened and looked for trains in both directions. Other witnesses corroborated her as to her stopping at the crossing. She testified that she neither saw nor heard any train, that she could see clearly a distance of eight or nine hundred feet up and down the tracks, and that there was no whistle blown or bell rung or any other warning given.

She said she stopped her car a second time when the front of it was two or three feet from the west rail of the southbound track (i. e., the first of the rails she was about to cross), that she again looked and listened for a train and that she neither saw nor heard any. This testimony is undisputed and the truth of it is therefore conceded. She said she continued to look as she crossed the southbound track and the intervening space, and that she didn't see or hear the train until the front end of her car was over the first or west rail of the northbound track. She said she then saw a passenger train "coming out of the curve" and it was "several hundred feet or more south," and that she was driving the automobile "as fast as [she] could go on account of the rough and irregularities on the crossing." She estimated the speed of the passenger train at between 50 and 60 miles an hour and the speed of her car in crossing the tracks at between two and three miles an hour. Before her car had completely cleared the northbound track, the rear of it was struck by the passenger train and Mrs. Hawk was injured. The jury awarded her $5,000 and her husband $2,000. Motion for judgment n. o. v. was refused and judgment was entered on the verdict. Defendant appealed.

It is conceded that the only question before us is whether or not Mrs. Hawk could be declared, as a matter of law, guilty of contributory negligence. The following facts are established and undisputed: The maxi-

mum width of the railroad crossing from the western end of the ties of the southbound track to the eastern end of the ties of the northbound track is 21 feet 10 inches. The overhang of the train on the eastern end of the ties on the northbound track is about four inches, the ends of the ties being 21 inches from the rail. The distance from the eastern rail of the southbound track to a point of safety east of the eastern rail of the northbound track is 16 feet. The railroad tracks are straight to a two degree westward curve, 1,040 feet south, as evidenced by a map based on an actual survey. It was testified to without contradiction that a person standing six feet west of the west rail of the southbound track (the first rail of which Mrs. Hawk crossed), can see a man standing 1,300 feet south, on the northbound track, and that a person actually on this first rail can see a boy on the northbound track 1,500 feet south. Mrs. Hawk testified that she had lived close to the railroad tracks in Manorville all her life, that she observed that particular passenger train many times and that she was familiar with that particular crossing all her life.

Since this is a motion for judgment n. o. v., the testimony must be read in the light most advantageous to the plaintiff and all conflicts therein be resolved in her favor, and she must be given the benefit of every fact and inference of fact pertaining to the issue which may be reasonably deduced from the evidence (Guilinger v. P. R. R. Co., 304 Pa. 140), and all unfavorable evidence and inferences therefrom, if depending solely on testimony, must be rejected. On the other hand, all the testimony which is contradicted by clearly proved and incontrovertible physical facts must be rejected (Cubitt v. New York Central R. R. Co., 278 Pa. 366; Hill v. P. R. T. Co., 271 Pa. 233), since such physical facts cannot possibly be erroneous.

If Mrs. Hawk looked after she started across the tracks, as it was her duty to do, her method and manner of doing so must have been so perfunctory and careless

as to have been equivalent to not looking at all. This court in Kolich v. Monongahela R. R. Co., 303 Pa. 463, said that one crossing a railroad track must not only stop, look and listen before going on the track but he must also look and listen constantly and with the utmost care until he has passed safely over the track. According to the average figures which Mrs. Hawk testified to, her automobile was traveling 2½ miles an hour and the train was traveling 55 miles an hour. In other words, the automobile was going one foot while the train was going twenty-two feet. Assuming that the automobile was 16 feet in length, Mrs. Hawk's car traveled a total distance of 38 feet, or let us say 40 feet for good measure, from a point of safety on one side of the tracks to a point of safety on the other side. Inasmuch as Mrs. Hawk could, as she sat in her car directly over the first rail of the crossing, have seen southward on the northbound track (where the northbound passenger train was traveling) for a distance of 1,500 feet and inasmuch as she saw no train before going on the tracks or while over the first rail, it follows that the passenger train must have been more than 1,500 feet away as her car began its 40 foot journey to clear the tracks. Under plaintiff's own testimony as to the respective speeds of the train and automobile, the train ran only 880 feet while her car was traveling 40 feet. It is clear that Mrs. Hawk didn't look as she testified she did or at least that she did not look carefully and vigilantly as it was her duty to do.

In Bornscheuer v. Traction Co., 198 Pa. 332, this court said: "It is vain for a man to say that he looked and listened, if, in despite of what his eyes and ears must have told him, he walked directly in front of a moving locomotive, and it is equally true that, when, with the certainty of an infallible mathematical test applied to the testimony of the witness, he is found to be mistaken in a material matter, it would be a travesty upon justice to allow a jury to consider such testimony, and a license to

them to render a false instead of a true finding. Such testimony is either intentionally false or mistakenly so."

A person on a clear day driving a 16 foot car in good condition, as this car was, over a crossing only 22 feet wide and with nothing to impede that car's progress except a roadway no rougher than plaintiffs' witnesses described this crossing to be, and which car is then and there struck by a train traveling from 50 to 60 miles an hour on a track which is visible from 1,300 to 1,500 feet in the direction from which the train came, is manifestly guilty of negligence. Mrs. Hawk being entirely familiar with this crossing, as she declared herself to be, and her view of the crossing and of the track being as unobstructed as the physical facts proved it to be, the conclusion is inescapable that Mrs. Hawk carelessly incurred at that crossing an unnecessary hazard. It is obvious that she was inattentive as she crossed the tracks, and inattention in that situation is negligence. Her stopping, looking and listening before committing herself to the crossing was not the limit of her duties in respect to that crossing. Common prudence requires alert watchfulness and celerity in getting out of a zone of danger as well as caution in getting into such a zone. It has been aptly said: "When human life is at stake, the rule of due care and diligence requires everything that gives reasonable promise of its preservation to be done, regardless of difficulties or expense": 20 Ruling Case Law, page 25, section 18.

The language of Mr. Justice FIELD, of the United States Supreme Court, in R. R. Co. v. Houston, 95 U. S. 697, 702, applies to the case now before us: "She [the plaintiff] was bound to listen and to look, before attempting to cross the railroad track, in order to avoid an approaching train, and not to walk [or drive] carelessly into the place of possible danger. Had she used her senses, she could not have failed both to hear and to see the train which was coming. If she omitted to use them, and walked [or drove] thoughtlessly upon the track, she

was guilty of culpable negligence, and so far contributed to her injuries as to deprive her of any right to complain of others. If, using them, she saw the train coming, and yet undertook to cross the track, instead of waiting for the train to pass, and was injured, the consequences of her mistake and temerity cannot be cast upon the defendant. No railroad company can be held for a failure of experiments of that kind. If one chooses, in such a position, to take risks, he must bear the possible consequences of failure. Upon the facts disclosed by the undisputed evidence in the case we cannot see any ground for a recovery by the plaintiff. Not even a plausible pretext for the verdict can be suggested, unless we wander from the evidence into the region of conjecture and speculation."

The judgment of the court below is reversed and judgment is here entered for defendant, non obstante veredicto.

Mr. Chief Justice FRAZER dissents.