## Roof et al. v. Philadelphia Rapid Transit Company

*James F. Masterson,* for plaintiffs.
*George H. Detweiler,* for defendant.

BROWN, Jr., J., September 23, 1935.—This suit for damages for personal injuries sustained by the minor plaintiff on June 13, 1929, was instituted in the Court of Common Pleas No. 4, and has been tried three times. At the first trial a judge of this court entered a compulsory nonsuit, and this was taken off by the court in banc. By reason of the consolidation of the trial lists of the five Courts of Common Pleas of Philadelphia County, the second trial was before a judge of the Court of Common Pleas No. 2, and a compulsory nonsuit was again entered. This was also removed by that court in banc. At the third trial, which was before another judge of the Court of Common Pleas No. 4, after defendant's motion for a nonsuit was declined, the defendant presented no evidence, its point for binding instructions was refused, and the jury rendered a verdict for the plaintiffs, for the minor in the amount of $1,000, and for his parents in the sum of $853. Defendant then moved for judgment n. o. v., and this motion was dismissed by the court in banc. Defendant's appeals followed, and so we now state the reasons for our action.

The minor plaintiff, who was 16 years of age and about 5½ feet tall at the time he received his injuries, testified that between 11 and 12 o'clock noon, daylight saving time, on June 13, 1929, he was delivering orders in the course of his employment with a market or grocery store located at 1527 Spruce Street, Philadelphia, using a pushcart, which was a three-wheeled vehicle, containing a small front wheel and two large side wheels, with an iron cross bar for a handle, being 36 inches in height and 36 inches in width, and in which were produce, fruits and vegetables; that from the store he proceeded west on Spruce Street to Sixteenth Street; that he crossed from the northeast to the southeast corner, and continued south on the east side of Sixteenth Street to Delancey Street; that at the northeast corner of Sixteenth and Delancey Streets he looked up and saw a trolley car of the defendant coming north on Sixteenth Street between Lombard and Pine Streets; that he pushed the cart off the sidewalk and over to the southeast corner of Sixteenth and Delancey Streets; that an automobile was parked on the east side of Sixteenth Street facing north 4 feet south from the south curb line of Delancey Street; that he saw the defendant's trolley car stopped, taking on and letting off passengers, at Pine Street (254 feet away); that 4 feet south of the south curb line of Delancey Street he turned the cart west and proceeded to push it across Sixteenth Street; that when the pushcart was in the middle of the trolley car tracks, the wheels got stuck in the ruts in the cobble stones in the road bed of the tracks; that he tried to dislodge it by wiggling it back and forth; that he noticed the trolley coming about 150 feet away; that he saw it again 30 or 40 feet from him; that it was coming at 25 miles per hour; that he gave a heave and the pushcart came back toward him; that he turned the cart halfway around, pointing south, with the left wheel up against the parked automobile; that just as he got the cart turned, the trolley car came by him; that the left shoulder of the trolley car struck the side or wheel of the

cart, swinging it around into the side of the trolley car and causing the handle of the cart to come down over his leg, throwing him to the ground, and breaking his leg, and that the trolley car then went about 100 feet before stopping.

Sterling Cropper, who was standing on the southeast corner of Sixteenth and Delancey Streets, testified that he saw an automobile parked 5 or 6 feet south of the south curb line of Delancey Street; that he saw the plaintiff going across Sixteenth Street about 5 feet south of the south curb line of Delancey Street; that he saw the cart stuck in the tracks and the plaintiff swinging the cart trying to get it out; that he saw the trolley car stopped at Pine Street taking on passengers; that he saw the plaintiff get the cart loose, but something else attracted his attention and he did not see the impact; that he heard it, and that the trolley car then went about 100 feet before it stopped.

This was all the evidence relating to the manner in which the minor plaintiff received his injuries, and it was defendant's contention that a case clear of contributory negligence had not been made out.

There is no doubt that the operator of defendant's trolley car was negligent. He had a clear view of the street and of the tracks in front of him, of the automobile parked on the east side of Sixteenth Street just south of Delancey Street, of the pushcart on the tracks, and of the minor plaintiff trying to remove it. As he approached, he did not slacken the speed of the car, as he should have done with an object on the tracks in front of it, but continued at 25 miles per hour, and he was not able to bring it to a stop after it hit the cart until it had gone 100 feet. Indeed, the defendant did not contend that he was not negligent but relied on the alleged contributory negligence of the minor plaintiff.

Defendant's argument was that the minor plaintiff never was on the tracks; that he was in a position where by letting go of the pushcart, he could have stepped back

to complete safety; that he saw the car approaching "in four changing locations, the last three of which brought it much nearer to him than it was when he first saw it", and remained in its path. But the defendant did not point out just when he became negligent. When he first saw the car, it was between Lombard and Pine Streets, and then when he started to cross the tracks with the push-cart in front of him, the car was stopped 250 feet away at the south side of Pine Street. Up to that time he was clearly not negligent. There was ample opportunity for him to have crossed in safety, and it would have been ridiculous for him to have waited for the car to pass, especially in view of present-day traffic conditions. Then the cart stuck in the ruts in the cobble stones of the roadbed of the tracks, due to no fault on his part. He endeavored to dislodge the cart from the tracks. He was so engaged when he saw the car 150 feet away. He had no reason to anticipate then that it would not slacken its speed or stop. He and the cart were in plain view. He was directing his attention to removing an obstruction from the tracks. He continued with his efforts, and then he saw the car 30 or 40 feet away, coming at the same speed at which he had observed it when it was 150 feet away. No doubt at that moment he realized that the car was not going to stop, that danger was imminent, but then the cart came loose, and he turned it out of the tracks. Whether instead of holding on to the cart, he should have let go of it and stepped to safety, was a question, in our opinion, for the jury.

When the trolley car did not stop but continued to approach, the minor plaintiff was suddenly confronted with the necessity of choosing in an instant whether to let go of the pushcart or to make one more effort to dislodge it. He did the latter, and as the cart came loose on his final heave so that he was able to turn it off the tracks, his judgment was not entirely wrong. However, "It is well known that, instinctively, one in an emergency is more apt to fail in exercising sound judgment than where there

can be a delay to deliberate on some course of action to avoid injury. As a result thereof, the rule that one is required to act in such a manner as to avoid injury to himself and to use such precautions as would be taken by a reasonably prudent person is not vigorously enforced in situations of sudden danger. . . . one in a position of sudden peril is not, as a matter of law, guilty of contributory negligence in failing to use sound judgment while attempting to escape impending danger, provided that he has gotten into the danger without negligence or fault of his own": Hickey et ux. v. City of Philadelphia, 103 Pa. Superior Ct. 486, 487, 488.

"A street car company has not the exclusive right to the use of a street on which it operates its road; nor has it such right to its own tracks. The streets . . . are for the use of the traveling public and the right of the street railway company to use them is in common with the public. . . . each must exercise its rights thereon with care and a due regard for the rights of the other. While . . . a street car company must have a superior right to use its tracks in the operation of its road, yet this does not forbid their use by the public but only requires that in their use the right of the public, under certain circumstances, shall be subordinate to that of the railway company. By placing himself or his horse and vehicle [or his automobile or pushcart] on the tracks of a street railway for any legitimate use of the street, the traveler does not become a trespasser, and will not become such unless he unreasonably and unnecessarily obstructs the company in the use of the tracks": McFarland v. Consolidated Traction Co., 204 Pa. 423, 427, 428, and unless he does so, it is not for the court to declare him guilty of contributory negligence: Struse v. P. R. T. Co., 87 Pa. Superior Ct. 46, 47. "While the street railway company has the right of way it must give the driver of a vehicle an opportunity to clear the track": Harper et al. v. P. R. T. Co., 258 Pa. 282, 288.

The situation in which the minor plaintiff found him-

self when the cart stuck in the track is much the same as the driver of an automobile which stalls on the track as a result of the unexpected failure of its engine: Mead v. Central Pennsylvania Traction Co., 63 Pa. Superior Ct. 76; McPherson v. P. R. T. Co., 85 Pa. Superior Ct. 275; or which he is endeavoring unsuccessfully to get out of trolley car rails, slippery because of recent rain: Hastings v. Northampton Transit Co., 100 Pa. Superior Ct. 348; or which he is attempting to extricate from traffic after parking it: Mitchell v. P. R. T. Co., 85 Pa. Superior Ct. 434; or when he is obliged to stop his automobile close to the car tracks on account of repairs to the street near the curb: Snyder v. Harrisburg Railways Co., 88 Pa. Superior Ct. 20; or the driver of a team or a truck which occupies the track for the purpose of unloading: McFarland v. Consolidated Traction Co., supra; Struse v. P. R. T. Co., supra; or a teamster who is not able to leave the tracks immediately on notice of an approaching car by reason of surrounding traffic: Boden v. P. R. T. Co., 77 Pa. Superior Ct. 605; Conner v. Pittsburg Railways Co., 40 Pa. Superior Ct. 63; in all of which there was an emergency or some compelling reason for the occupancy of the track at the time of the collision. This is not the case of one who knows of the approach of a street car and voluntarily leaves his vehicle on the track when there is no reason, mechanical or otherwise, requiring him to do so, as in Brown et al. v. Beaver Valley Traction Co., 94 Pa. Superior Ct. 7, Rothberg v. P. R. T. Co., 97 Pa. Superior Ct. 447, and Glassman et al. v. P. R. T. Co., 111 Pa. Superior Ct. 58; or who parks it too close to the track under the mistaken impression that the space was enough to permit the cars to pass it, as in Patton v. Philadelphia Traction Co., 132 Pa. 76, and Hause v. Lehigh Valley Transit Co., 38 Pa. Superior Ct. 614; or who miscalculates the space occupied by him between his parked automobile and the tracks, as in Rothweiler v. P. R. T. Co., 93 Pa. Superior Ct. 369. The minor plaintiff did not voluntarily let the cart remain on the tracks. Its being stuck

in the ruts was a compelling reason for its being there at the time of the collision. When he pushed it on he was within his legal rights to do so, and when it got caught, he tried to discharge his duty of getting it off. "It could fairly be assumed that he momentarily expected to be successful. Whether or not, in the light of prevailing conditions", he "should have stopped and endeavored to signal the car was for the jury": Hastings v. Northampton Transit Co., supra, p. 353. True, in that case the plaintiff was driving an automobile, as was the plaintiff in McPherson v. P. R. T. Co., supra, where it is stated, at page 277: "It was a question for the jury to decide whether the plaintiff should have left his automobile before the car hit it, or whether he was justified in remaining in it and trying to start it", but the principles are equally applicable to the situation presented to the minor plaintiff.

Thus, in Craven v. Pittsburgh Railways Co., 243 Pa. 619, the plaintiff, a street cleaner, testified that he turned the loaded cart which he was pushing upon the track of a street railway company in order to pass a standing horse and wagon, proceeded along the track until the horse and wagon were passed, and then attempted to turn the cart off the track, but its wheel caught on the rail, started to slide and slid about 6 or 8 feet, and the cart was struck by a trolley car, which he had seen approaching 500 feet away, when the cart entered the track, but which he did not look at again until it was 6 feet away. It was held that the question whether he was negligent was for the jury, the court pointing out, at page 623, that his "attention was riveted" upon getting the cart off the track, and that he "was not an ordinary pedestrian with no care other than his own safety", but was "engaged upon his work". Such was the situation of the minor plaintiff in the present case. Although he did look again at the approaching car after the cart was caught on the track, his attention was directed to removing it. He could not watch the car all the time and at the same time endeavor to dislodge the cart. Likewise he was not merely a pedestrian

crossing the tracks but was engaged in his work of delivering fruits and vegetables for his employer. These had been entrusted to his care, and it was natural that he should endeavor to protect them and not abandon them to be destroyed. This feeling no doubt influenced him to do what he did, and whether, in the moment in which he had to decide, he acted prudently was not a question for the court to decide as a matter of law but one for the determination of the jury.

Schwenk v. Pennsylvania R. R. Co., 315 Pa. 434, and Hawk et ux. v. Pennsylvania R. R. Co., 307 Pa. 214, cited in defendant's behalf, had to do with passengers in automobiles at railroad crossings, and as was pointed out in McPherson v. P. R. T. Co., supra, at page 277, where the motor of an automobile "stalled, not on a railroad, but on a street railway track", it was for the jury, not the court, to say whether the plaintiff should have expected that the street car would be operated so as to hit the stalled automobile which was in plain view. So in the instant case, it was for the jury to determine whether the minor plaintiff was negligent. "The failure to anticipate negligence which results in injury is not negligence and will not defeat an action for the injury sustained. A party is not bound to guard against the want of ordinary care on the part of another; he has a right to presume that ordinary care will be used to protect him *and his property* from injury. No one can complain of want of care in another where care is only rendered necessary by his own wrongful act": Wagner v. P. R. T. Co., 252 Pa. 354, 359, 360. (Italics ours.)

In Clark v. Pittsburgh Railways Co., 314 Pa. 404, and in Koppenhaver v. Swab, 316 Pa. 207, 210, also cited for defendant, the plaintiffs were pedestrians, and, of course, they were "freer to act" than moving vehicles, or than the minor plaintiff, who was, as was pointed out above, "not an ordinary pedestrian", but was encumbered with or operating a pushcart.

The difference of opinion of the various judges who

have heard the case from time to time may indicate that it is not free from doubt, but under the evidence presented at the third trial, which, of course, was what was before us on defendant's motion for judgment, it was our opinion that we could not hold, as a matter of law, that the minor plaintiff was guilty of contributory negligence. The views of the different judges may indicate that the case is a close one, and if it is so regarded, then the question of contributory negligence was properly for the jury.

NOTE.—An appeal from the foregoing decision was taken to the Superior Court, but was subsequently withdrawn.