Bradley et al., Appellants, *v.* Rhodes.

Argued October 8, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Francis J. McCarthy,* with him *John V. McDonald,* for appellants.

*Oliver C. Riethmiller,* for appellee.

OPINION BY STADTFELD, J., December 11, 1936:

This is an action in trespass for injuries to the person of Carolyn M. Bradley, a minor. She was born on October 30th, 1928 and was injured on May 7th, 1934, being at the time about five and one-half years of age.

The plaintiff filed a statement of claim and no affidavit of defense was filed, ownership and operation of the automobile being admitted. The case was tried on January 20th, 1936 before KUN, J., and a jury.

Between 7 and 8 o'clock p. m. (Daylight Saving Time) on May 7th, 1934, the minor plaintiff and a number of other children were playing on the sidewalk and in the roadway of Delhi Street between Pike and Luzerne Streets in the City of Philadelphia. In that block, Delhi St. is 40 ft. wide, the roadway being 20 ft. and the sidewalks 10 ft. each. The defendant's car was standing in front of her home, 3921 North Delhi St., facing northwardly. She entered the car and went backward a short distance and then drove northwardly between automobiles parked on the opposite sides of the street. At the time she started to go northwardly, there were children playing in the street and other children on the sidewalk. The minor plaintiff and her companions were about in front of 3937 North Delhi St. The distance from 3921 North Delhi St. is approximately 112 ft. The minor plaintiff had started to walk across North Delhi St. from the easterly side to the westerly side and had turned her head to look back. Plaintiffs' witness testified that when the child was in the street, she was 50 or 60 ft. from the automobile, but he did not state in what part of the street the child was nor what took

place between the time the child was at the west curb and the time she was under the front bumper of the car. There was nothing between the defendant's car and the minor plaintiff to prevent defendant seeing her. The front of defendant's car came in contact with the minor plaintiff who was picked up from underneath the front of the car. At the time defendant's automobile struck the minor plaintiff, the defendant was engaged in shifting gears. When defendant's car was brought to a stop, minor plaintiff was under the front bumper between the front wheels. Her left thigh-bone was broken.

A verdict was rendered in favor of the minor plaintiff in the sum of $1,000 and in favor of the parents for $1,000. The parents voluntarily filed a remittur in excess of $538.50, the amount of the actual pecuniary losses. The defendant filed a motion for judgment n. o. v. which was granted by the court. On March 11th, 1936, the court entered its final judgment n. o. v. for the defendant. From the entry of that judgment, this appeal has been taken.

On defendant's motion for judgment n. o. v., the testimony should not only be read in the light most advantageous to the plaintiffs, all conflicts therein being resolved in their favor, but they must be given the benefit of every fact pertaining to the issues involved which may reasonably be deduced from the evidence: *Hawk v. Penna. R. R.,* 307 Pa. 214, 160 A. 862; *Vlasick v. Baltimore & Ohio Railroad Co.,* 307 Pa. 255, 161 A. 70; *Galliano v. E. Penn Electric Co.,* 303 Pa. 498, 154 A. 805; *Christ v. Hill Metal & Roofing Co.,* 314 Pa. 375, 171 A. 607; *Uhler v. Jones,* 78 Pa. Superior Ct. 313; *Malchinsky v. Mutual Life Ins. Co.,* 90 Pa. Superior Ct. 1; *Chew v. P. R. T. Co.,* 90 Pa. Superior Ct. 155.

The plaintiffs lived, at the time of the accident, in premises at 3922 North Delhi St., which is on the west side. The defendant lived in premises at No. 3921

North Delhi St., which was about across the street. The plaintiff father, Raymond S. Bradley, testified that the accident happened between 7 and 8 o'clock P. M. on May 7th; that it was a dry and clear day; that North Delhi St. is 20 ft. from curb to curb, with 10 ft. sidewalks; that he, the father, was sitting on his front porch reading a paper; and that when he last saw his daughter Carolyn, the injured girl, about ten minutes before the accident "she was playing on the pavement" about 125 to 150 feet up North Delhi St. and about in front of the Phillips' home, No. 3937 North Delhi St., which is on the east side. His first knowledge of the accident was the screaming of the people.

The evidence for the plaintiffs, as to the accident, rests entirely upon the testimony of the one witness, John Prarie. We quote from his testimony: "Q. On May 7, 1934, were you on Delhi Street between Pike and Luzerne Streets? A. Yes. Q. What were you doing there that day? A. Visiting a friend. Q. Were you walking, standing or sitting? A. I was driving. Q. Your car? A. Yes. Q. In what direction was your car facing? A. Headed north, on the west side of Delhi Street. Q. You mean about in front of the property you were at? A. Yes. Q. That would be about? A. That would be about 21 or 23? A. Yes, on the left side of the street. Q. You were stopping there? A. I was parked there. Q. You were not driving? A. No, I was parked there. Q. You were facing north on the west side of Delhi Street? A. Yes. Q. About opposite what? A. Directly in front of 21 or 23, I do not know which was on the west side, I think it was 22, on the west side. Q. About 21 or 22, which is on the west side? A. Yes. By Mr. McCarthy: Q. What kind of a day was it? A. It was a clear day. By the Court: Q. Your car was parked? A. Yes, I was sitting in the car, parked on the west side of Delhi, and I saw this car starting up. Q. Where was the car? A. Opposite me, on the east side

of Delhi Street, near the rear of my car. She started up, and started north on Delhi Street, and she got the car maybe I judge in first gear, and she had gone up Delhi Street, and then I saw this group of children, and I could not understand why she should have gone so fast, she was not very fast. Q. When did you first notice the children? A. When I saw the car going away, and I was watching. By the Court: Q. When you saw the car, which turned out later to be the defendant's car, that later had the trouble? A. Yes, the same car. Q. You saw it start off in first gear apparently? A. Yes. Q. You think she started in first gear? A. Yes, she started off. Q. And she was not going very fast? A. No. Q. So you would consider? A. Absolutely. Q. At the same time you saw some children playing up ahead? A. Yes, I had been watching the children. Q. And at the same time you were conscious of the fact that the car was started slowly, and regularly, and you at the same time saw some children playing up the street? A. Yes. Q. What happened, from that time on? A. This car continued on up the street, and this little girl she was going towards the west curb. Then these children apparently left the center of the street to go towards the east curb, and they called to her, and she turned her head about, to see what they wanted, while at the same time she continued to the west curb. By Mr. McCarthy: Q. What happened? A. This car continued more or less, and then my view up there was that I could not see any more, but I saw the child was underneath the machine. Q. Did you see her underneath the machine? A. Underneath the machine. By the Court: Q. Do you know at the time this car blocked your vision, whether the little girl had turned around to run back or anything? A. No, she was still on this west curb. Q. Do you know whether she did? A. You could see her feet. Q. And this car was in between where you were sitting and

where the children had been? A. Yes. Q. And attracted your attention? A. Not altogether. Q. you said that it blocked your view? A. Only to a certain extent. Q. Do you know what precisely happened in front of that car, that you could not see? A. No. Q. The next thing you knew there was a contact and the child was under the car? A. That is right. Q. The little girl was going towards the west curb—where the other girls were, going to the east curb? A. Yes. Q. In the meantime the defendant's car was moving forward? A. Yes, those other children apparently were on the east curb. Q. At least they had been going there? A. Yes. Q. And they got to the east curb? A. I could not say that. Q. They were near that? A. That is right. Q. And the little girl who was hurt was the only one that went to the west curb? A. Yes. Q. But the children going to the east curb, the majority of them, called to the little girl? A. I imagine that is what happened. Q. You said that? A. Yes. Q. And the other children sort of called from the curb? A. Yes, that is true. Q. Someone in the group called to her? A. That is true. Q. At the same time the defendant's car was moving forward, and had somewhat gotten in your line of vision? A. Yes. Q. And then something happened? A. Yes. Q. And the little child was under the car? A. Yes. Q. You saw the feet under the car? A. That is right. By Mr. McCarthy: Q. What part of the car? A. Under the right front side. By the Court: Q. The defendant's car you say that was going north? A. Yes. Q. And the girl was going to the west curb? A. Yes. Q. And the little girl's feet were on the right side. A. I did not say feet. Q. Some part of her body? A. Yes. Q. The car was going northwardly on Delhi Street— which side of the car would be to the west side? A. The left side. By Mr. McCarthy: Q. As this car went north on Delhi Street, was there anything between the car and the little girl in the street, which would obscure

the vision of the driver? (No answer.) By the Court: Q. There was nothing in between the car as it was going, and the children? A. No. Q. This car was in the center, and there was nothing between the defendant's car, nothing in front of it, and the child? A. No. By Mr. McCarthy: Q. About how far away was the child from the car when you noticed the child in the street? A. I judge about 50 or 60 feet. Q. What did you do after you saw the little girl under the car? A. I immediately started my car, and drove up to the rear of that car."

Irrespective of the contradictory statements of the witness, as to the speed of the car, when he says in one part: "I could not understand why she should have gone so fast, she was not very fast" and in another part "Q. And she was not going very fast? A. No. Q. So you would consider? A. Absolutely," the same has no probative value as to speed. When we consider that defendant had started off in first gear, and was shifting into second gear, the short distance the car had traveled, and the fact that after the accident, the child was lying under the right front side of the car, would indicate that the car must have been under perfect control and have stopped almost instantly after the child had come in contact with the car.

Quoting from the opinion of the lower court: "...... there is no evidence on the plaintiffs' side of the case as to what happened between the time as the witness said he saw the children 50 or 60 feet in front of defendant's car when they separated to go to the east and west curbs of the street, and the time when the minor plaintiff came in contact with the defendant's car. The last time the witness saw the minor plaintiff, that is before the accident, she was by his own testimony, on the west curb of the street. The witness' testimony appears, in response to the interrogation of the court as follows: 'Q. Do you know at the time this car

blocked your vision whether the little girl had turned around to run back or anything? A. No, she was still on the west curb.' The defendant's car was moving up the narrow street while the witness was seated in his parked car in back of it, so that defendant's car came within the line of the witness' vision obscuring therefrom what happened in front of the defendant's car. The witness testified as follows: 'Q. Do you know what precisely happened in front of that car which you could not see? A. No. Q. The next thing you knew there was a contact and the child was under the car? A. That is right.' "

The witness stated that the child was about 50 or 60 feet away from the car when he noticed the child, in the street, but he does not say where the child then was in the street, nor what the child was doing, whether she was there at the west curb, or at the east curb, or in the middle; whether she was running, or walking or standing. The testimony is entirely silent as to how the accident happened. If the child was proceeding to the west curb when the other children called to her, and when she "turned her head around" and if she "was still on this west curb" at that time, then the child must in some way have gotten back in front of the car in order to be struck, but from the time the child is on the west curb, Prarie says nothing more about the movements of the child, and from the time the automobile is 50 or 60 feet away, he says nothing more about the progress of the automobile nor how the two came into collision. As stated by the lower court in its opinion: "It is perfectly apparent from a consideration of the testimony, that there is a hiatus in it, which is the very reason plaintiffs failed to make out a case."

A verdict cannot be based upon a guess or conjecture, but must be supported by evidence. The burden is on the plaintiffs. In the absence of testimony, there is no presumption as to the fact and hence nothing upon

which to base a verdict for the plaintiffs. There is not a word of testimony to indicate negligence on the part of the defendant.

*McMillen v. Strathmann,* 264 Pa. 13, 107 A. 322, cited by appellants, was a case in which verdict and judgment were for the defendant. A boy about five and one-half years old ran across the street in the middle of the block and back again in front of a heavily loaded truck going 10. or 12 miles per hour. The Supreme Court said, at p. 15: "Although required to use care he (the driver) was not bound to anticipate that the boy would run back across the street in front of the truck."

*Fisher v. Amsterdam,* 290 Pa. 1, 137 A. 797, is referred to in appellants' Brief as being distinguishable from the present case because "There was no testimony as to how long before the accident the plaintiff was in the roadway or of opportunity defendant had to see him." In that case, the Supreme Court in a per curiam opinion said no testimony was presented as to the speed of the car nor as to the course it was pursuing except that it was going backwards. There was no testimony as to how long the boy had been in the roadway nor of what opportunity he had to see him. The car stopped immediately and took the boy to the hospital. The court said, at p. 3: "Taking into consideration all the testimony in the case, the majority of the court think that plaintiff, by himself, and his witnesses, failed so to describe, picture, or visualize what actually happened at the time of the accident as to enable one fixed with responsibility for ascertaining the facts to find that defendant was guilty of negligence; therefore the non-suit was properly entered: *Mack v. U. S. Gypsum Co.,* 288 Pa. 9, 11."

*McAvoy v. Kromer,* 277 Pa. 196, 120 A. 762, is very much in point. That was a case in which a seven year old boy was struck by an automobile on City Line

Avenue, Philadelphia. The evidence for the plaintiff was that the boy was seen just before he left the curb to cross from the north to the south side of City Line and he was next seen when being struck or underneath the front part of the automobile. No one saw the child in the intervening space from the curb to the place of the accident, nor did anyone know just how the accident occurred. The Supreme Court said, p. 198: "The accident occurring between crossings, did he suddenly run in front of the car; was he crossing the street heedlessly; was he crossing the street without regard to traffic, having his hand thrown over his head to keep the storm from his face; did he reach the south side of the street safely and suddenly dart back in front of the car; or did the car suddenly swerve, striking him? All these circumstances are left to conjecture; defendants might have been responsible for one or more of the causes and not so as to others. In such cases, where it is equally probable the accident may have resulted from either cause, there can be no recovery: *Alexander v. Penna. Water Co.*, 201 Pa. 252." The Court further states at the top of p. 199: "While the driver of an automobile is required to be vigilant, he is not bound to anticipate that a child will suddenly dart from the side of the street or suddenly run across the street, in front of his car."

In *Niziolek v. Wilkes-Barre Railway Corp.* 322 Pa. 29, plaintiff recovered a verdict for the death of her husband. The Supreme Court reversed the judgment on the verdict entered in the lower court. The Supreme Court stated the burden of proving how the accident happened was on the plaintiff and she failed to sustain that burden. The plaintiff furnished many theories and conjectures as to what happened but that could not be allowed to take the place of evidence. The court said, p. 31: "How did defendant's car and plaintiff's husband come into colli-

sion? No witness testified on this point, nor does it appear from the circumstances. What was the distance from the car to the object when it was seen by the motorman? How soon after seeing the object did the accident happen? How far did the car travel in the meantime? The evidence throws no light on these vital questions. Plaintiff has not shown excessive speed or any other act of negligence on the motorman's part."

In the absence of any testimony showing negligence on the part of the defendant, she was entitled to binding instructions and the court properly entered judgment non obstante veredicto in her favor.

Judgment affirmed.