Adams, Appellant, *v.* Armour & Company.

Argued October 4, 1940.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, Rhodes and Hirt, JJ.

Trespass for personal injuries.   Before DAVIS, P. J.

*James F. Masterson,* for appellant.

*Henry S. Ambler,* with him *Frank R. Ambler,* for appellee.

OPINION BY STADTFELD, J., November 13, 1940:

This is an action of trespass arising out of a collision between a motor vehicle and a pedestrian. It was tried upon a statement of claim before DAVIS, P. J., and a jury on April 15, 1940.

Plaintiff, about seventy-two years of age and deaf, was, on September 9, 1938 at about 6:00 P.M. (in daylight) crossing Long Lane from the east to the west side, about 30 feet north of the intersection of Long Lane, Lewis Avenue and Glenwood Road in Lansdowne, Delaware County. Long Lane makes a sharp bend to the east about 100 feet south of where plaintiff was crossing.

Before starting to cross, plaintiff looked both ways for traffic. He saw traffic approaching from his right (north) and waited for this to pass. He again looked and seeing no traffic approaching from either direction, started to cross. As he was crossing, he continued to watch for traffic and after he had taken ten steps in plain view of any traffic and was more than half way across the road, he saw defendant's truck suddenly approaching around the bend of Long Lane on the wrong side of the road and heading directly for him at such speed that he was unable to get out of the way. He was struck by the front bumper and radiator and thrown a distance of about 30 feet.

A verdict was rendered for the plaintiff in the sum of $1500. Defendant filed motions for new trial and judgment n. o. v. The court below dismissed the motion for new trial but sustained the motion for judgment non obstante veredicto.

On a motion for judgment n. o. v. the testimony should not only be read in the light most advantageous to plaintiff, all conflicts therein being resolved in his favor, but he must be given the benefit of every fact and inference of fact, pertaining to the issues involved, which may be deduced from the evidence: *Mountain v. American Window Glass Co.,* 263 Pa. 181, 106 A. 313; *Hawk et ux. v. Pennsylvania R. R.,* 307 Pa. 214, 160 A. 862; *Mitchell et al., Admrs. v. Dunn, Admrx.,* 312 Pa. 276, 167 A. 774; *Dempsey v. Cuneo Eastern Press Ink Co.,* 318 Pa. 557, 179 A. 220.

The issues involved here are two, namely the negligence of defendant and the contributory negligence of the plaintiff.

At the scene of the accident, Long Lane runs in a northerly and southerly direction. Lewis Avenue enters Long Lane diagonally from the southwest but does not cut through the east side of Long Lane. As a result, an intersection in the shape of a "Y" is formed. The point at which the plaintiff started to cross was "just above where Lewis Avenue intersects Long Lane" or where "if it came over it would be exactly where Lewis Avenue hit the east side of Long Lane". While there is no regular crossing marked on the street, the evidence showed that most people crossed where plaintiff attempted to cross.

We quote from the testimony of appellant-plaintiff, as showing the place where the accident occurred and the care exercised by him: "A. I had been in a barber shop and coming up to go across the street to go home, there were automobiles parked on the east side of Long Lane, both north and south of the barber shop. There

was about thirty or forty feet in the clear. And I went out to the edge of the cars to check on the traffic, and there was traffic coming from my right or from the north. I stepped back until that was through and looked out again, and north was clear, on my right, and on my left was clear, as far as I could see. I started hurriedly across the street, looking both ways, when suddenly from my left came a truck, coming so fast that I could not get out of the way. *I was beyond the center of Long Lane,* and there was a small car parked on the opposite side of the street. I could not go that way, and it was too close to go back; so I faced him and reached for whatever I could get hold of to keep from being dragged under the truck, whether it was the water intake or an ornament on the top of the hood, with one hand, and I don't know what I got hold of with the other. And I was struck with the front of the—it was a sort of a streamline front, and my leaning forward, it just took me from here and frisked me through the air and landed about thirty feet on my back, rump and spine. Q. What did you do before you left the curb? A. Check on the traffic. Q. Did you see any traffic approaching? A. Yes. From the north, on my right. Q. How far could you see down Long Lane? A. Oh, probably a hundred or two hundred feet. Long Lane makes a sharp turn about a hundred feet south of where I was standing, and there were cars parked down around that corner, and of course the further out in the street I got I could see further down. Q. How many steps had you taken from the curb when you were hit? A. Oh, probably eight or ten. Well, of course, it would be more if you count from the curb, because I had stepped out to the edge of the parked cars. Probably eight or ten steps. Q. How far across the street had you gotten? A. *Well, I had gotten well past the center of the street.* Q. What is the width of Long Lane? A. About thirty feet. Q. What part of the defendant's car struck you? A. The front of the radiator or hood. Q. What did you do

with respect to traffic as you continued across the street? A. I was checking on the traffic clear across until I was hit. Q. Did you see the defendant's car before it struck you? A. Only immediately. It came right around a sharp—it came around a sharp bend, and as I got out where I could see it, it was right there. Q. How far away was it at that time? A. Ten or fifteen feet, I would say. Q. Did you see the defendant's car again before it struck you? A. I was looking right at it. When it was right on top of me I reached for something to grab. Q. Are you totally deaf? A. Yes, I am. Q. How far away from the point of impact were you picked up? A. About thirty feet. About the width of the street."

The fact that plaintiff attempted to cross at or near a street intersection which did not completely cross Long Lane does not convict him of contributory negligence or in any manner limit his right to recovery. In the case of *Johnston v. Cheyney*, 297 Pa. 199, 146 A. 551, plaintiff pedestrian was struck as she crossed West Chester Pike from the north to the south side. At the point where she started to cross, Brief Avenue enters West Chester Pike from the south but does not intersect West Chester Pike completely. The court here recognized both the right of pedestrians to cross at such a place and the duty of the driver to be on the alert for pedestrians crossing. Quoting from the opinion at p. 202: "This was not tried as the case of an accident at a public crossing, but the entry of one public street into another creates a condition which, even to a stranger, suggests at least a degree of care not required in a single open street ...... It being the end of an incoming avenue, he (the driver) was bound to take notice that it was a place where vehicles might be turning in or coming out and where pedestrians might be expected to cross the pike." To same effect see *Robb v. Quaker City Cab Co.*, 283 Pa. 454, 129

A. 331; also *Lamont v. Adams Express Co.*, 264 Pa. 17, 107 A. 373.

The mere fact that appellant was crossing between intersections does not, in itself, convict him of contributory negligence as a matter of law. Quoting from *Anderson v. Wood*, 264 Pa. 98, 100, 107 A. 658: "A pedestrian cannot be held to be negligent by the court, as a matter of law, when he attempts to cross a street between the regular crossings, but in exercising this right he must have due regard to the conditions of the traffic before he enters the cartway." And in *Robb v. Quaker City Cab Co.*, supra, the court said, at p. 458: "What we hold in *Weaver v. Pickering*, (279 Pa. 214, 217), is that a pedestrian before attempting to cross a two-way city street, between intersections, must look in both directions for approaching traffic; ......" The uncontradicted testimony of plaintiff makes it obvious that in attempting to negotiate the crossing he adhered to the rule laid down in the cases cited. It shows that he looked twice and then when he had a clear view for over 100 feet in both directions, started to cross, continuing to look until he was struck. Upon this testimony, the question of contributory negligence was for the jury which by their verdict found him free of contributory negligence.

As to defendant's negligence: Plaintiff was struck when he was well past the center of a 30 foot wide highway, after he had taken ten steps from the place where he had waited for traffic to pass. This point was established to have been at a point the width of a car from the east curb of Long Lane. At the time, plaintiff eventually began his crossing of the cartway, his view was clear for about 100 feet to his left and considerably more to his right. The view to the left at the time plaintiff started to cross was shortened by a bend in Long Lane which defendant had testified he had turned and from which turn he was straightening out at the time the accident happened.

The defendant's testimony was to the effect that the truck was going about 15 to 20 miles per hour. Using this figure as the correct one, the inference is perfectly clear that when plaintiff started his ten steps, defendant's truck was out of view around the bend and that at the speed at which defendant was driving, was able to cover the 100 feet from the bend in the time that plaintiff was crossing Long Lane to the place where he was struck.

Defendant's driver testified that at the time this accident happened, he was straightening out after making the turn, and that he had to turn slightly coming up Long Lane to follow the road. The uncontradicted evidence of the plaintiff was that the accident occurred after he had passed the center of Long Lane, which would place him in the southbound lane of traffic. Thus we have an accident occurring with defendant's truck travelling on the wrong side of the road. Defendant's driver testified that he had to turn only slightly to follow the road. Yet, if the turn were slight and the speed only 15 to 20 miles per hour, then this should be accomplished without crossing to the other side of the road and without any need for straightening out.

In *Anderson v. Wood,* supra, the decedent pedestrian was in the cartway when defendant's automobile was more than 100 feet away from him approaching on the side of the street decedent was then crossing. No machine or vehicle was between the driver of the car and the pedestrian and each had an unobstructed view. Quoting from the opinion, at p. 101: "...... (the decedent) having, without fault on his part, committed himself to the act of crossing, it became the duty of appellant to so control his car as to do no injury to the pedestrian, who was on the cartway a sufficient length of time to be seen, the driver of the car being far enough away to bring his machine under control. This the driver did not do, and his neglect caused the accident ...... Speed is not the only element that

enters into the question of negligence, and, regardless of it, a car may be under such imperfect control as to amount to negligent operation, and evidence of it would sustain the charge of negligence."

Plaintiff's testimony was unequivocal that he was struck when he was well past the center of Long Lane and that when he first saw defendant's truck it was coming so fast that he could not get out of the way.

The court below in its opinion stated that "the conclusion that the truck was not going at an unlawful rate of speed may be arrived at from the fact that it stopped within two feet to assist the plaintiff." This statement ignores the testimony of the plaintiff that he was picked up about thirty feet from the point of impact. A plausible inference to be gathered from this testimony was at least that since the truck was travelling on the wrong side of the road, the defendant did not have his truck under proper control so as to avoid causing the injury and that he was operating at an excessive rate of speed under the circumstances. The court below took as wholly true the statement of defendant's driver that he stopped within two feet to assist the plaintiff. Upon this statement and this alone, the court below decided that there was no evidence of undue speed and no evidence that the defendant was negligent.

The court below in convicting plaintiff of contributory negligence, states: "It does not avail the plaintiff to state that he did not see the approaching vehicle when the incontrovertible testimony is that after he had taken six or seven steps, the truck came in contact with him. The only possible conclusion that could be reached from such testimony is that the plaintiff did not look south before he started to cross the street."

The rule as to incontrovertible facts has no application in the instant case. Quoting from the opinion of President Judge KELLER in *Peruzzi v. Penna. R. R. Co.*, 99 Pa. Superior Ct. 519, at 524: "But that rule is not

to be applied in a case of split seconds, involving a close calculation of time and space; it is enforced where the accident occurs so immediately after the plaintiff's entrance on the crossing that it is clearly physically impossible for the injured party to have stopped, looked and listened and not seen the nearby approaching train: *Mensch v. Payne*, 274 Pa. 356; *Mills v. Penna. R. Co.*, 284 Pa. 605."

In the instant case, all the evidence shows that the accident occurred past the middle of the street where the plaintiff had reached after carefully committing himself to crossing the street. The testimony as to distances were all approximations and that as to speed supplied only permissible inferences from which the jury found defendant to be negligent.

There is no evidence other than that of the plaintiff to show where defendant's truck was at the time he started to cross. The opinion of the court below sets forth that the position of defendant's car must have been such that the plaintiff could have seen it had he looked. Such a test cannot be applied in a case of this nature. In *Zimmer et al., v. Clark*, 103 Pa. Superior Ct. 145, 146, 156 A. 815, President Judge KELLER stated: "...... our Supreme Court has decided that 'The rule that evidence which contradicts incontrovertible facts cannot alone be made a basis for sustaining a verdict, has no relevancy where the testimony of witnesses is needed in order to apply those facts to the issue in the case': *Scalet v. Bell Telephone Co.*, 291 Pa. 451, 456; *Pfeffer v. Johnstown*, 287 Pa. 370. The position of a moving object which causes an injury, as shown by certain evidence, cannot be called an incontrovertible physical fact, when other evidence or inferences therefrom show the position of the object to be elsewhere at the time of the accident: *Snyder v. Penn Liberty Refining Co.*, 302 Pa. 320; *Schaeffer v. Reading Transit Co.*, 302 Pa. 220. Such 'incontrovertible physical facts' are never established by oral evidence as to

the position, speed, etc., of movable objects: *Hegarty v. Berger,* 304 Pa. 221, 226." See, also, *Smith v. Wistar,* 327 Pa. 419, 194 A. 486.

The court below, in discussing the ground of its decision, cites the case of *Weaver v. Pickering,* supra, for the presumption that plaintiff looked before he started to cross and rebutted by the fact that before he had gone ten feet, he was struck by a truck in plain sight and right at hand when he stepped in its path. Plaintiff's testimony is that he looked carefully and continually during his entire transit of the crossing. All the evidence is that he had gone at least fifteen feet before he was struck and the testimony of which plaintiff should be given the benefit, is clear that the truck was not in plain sight when he started to cross and that he did not step into its path. The case referred to is different in its facts and has no application.

A careful examination of all the testimony satisfies us that there is nothing which would justify the court in withholding the question of defendant's negligence and plaintiff's contributory negligence from the jury, and that the verdict is fully sustained by the testimony.

The assignments of errors are sustained, the judgment is reversed and judgment is now directed to be entered on the verdict in favor of plaintiff.