## Sweet (et vir, Appellant) *v.* Rounds et al., Appellants.

Argued March 21, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*Frank B. Quinn,* of *English, Quinn, Leemhuis & Tayntor,* for defendants, appellants, Nos. 46 and 47, appellees No. 80.

*Wm. B. Washabaugh, Jr.,* for appellee wife plaintiff and for appellant, husband plaintiff.

OPINION BY MR. CHIEF JUSTICE MAXEY, April 10, 1944:

The first of these appeals is from the action of the court below in refusing defendant's motion for judgment n.o.v., in the trespass action in which Leapha Sweet was the plaintiff, and the second appeal is by her husband, Samuel E. Sweet, from the court's refusal to take off a

compulsory non-suit in his case. Mrs. Sweet was injured while a passenger in a car operated by her husband.

At 8:25 P. M., March 6, 1941, the Sweet automobile was proceeding southerly on Plum Street, Erie. The defendant's motor bus was at the same time proceeding easterly on West 23rd Street. At the intersection of these two streets a collision occurred and as a result of it Mr. and Mrs. Sweet sustained personal and property injuries. The evidence on the part of the plaintiffs was that their car was travelling slowly just before entering the intersection and that when it was about three-quarters of the way across, the defendant's bus struck it and shoved it over to the southeast corner. The driver of the bus claimed that his vehicle was in the intersection first and that the driver of the Sweet car attempted to pass in front of the bus and struck its left hand corner.

At the close of the trial defendant's motion for a compulsory non-suit was granted as to the husband plaintiff and refused as to the wife plaintiff. The jury returned a verdict for the wife in the sum of $3,260.

The defendants-appellants contend that there was no evidence of any kind warranting the submission to the jury of the issue of defendants' negligence, that Sweet "should have seen a large bus, well lighted, approaching and should have, in the exercise of due care, stopped his car and allowed the bus to proceed safely across the intersection".

Mrs. Sweet testified that her husband's car was "three-quarters of the way across the intersection when the bus loomed right up". Mrs. Taylor, a passenger in the Sweet car, testified that Sweet before he reached the intersection "slowed down to such an extent" she "thought it was a stop street" and when the Sweet car on its proper side of the street, was more than half way through the intersection", Mrs. Sweet said: "Ed, a bus". She stated that the bus struck the Sweet car "in the middle." Mrs. Taylor said the section of the car (the rear seat) where she was sitting was just "over the cen-

ter, south of the center of the street" when she first had her attention attracted to the on-coming bus. From this testimony the inference is legitimate that the Sweet car was in the south-west corner of the intersection when the crash occurred.* Photographs of the Sweet car taken on the day after the accident show that it was struck back of the rear half of the right rear door.

If the Sweet car was *in* the intersection before the bus reached the intersection, the bus driver was under the duty to yield to it. The vehicle on the left must yield the right of way to the vehicle on the right (in this case, the bus) when both vehicles approach or enter "an intersection at approximately the same time". The driver of a vehicle "approaching but not having entered an intersection, shall yield the right of way to a vehicle within such intersection". Act of June 29, 1937, P. L. 2329, 75 P. S. 572. As to which of these vehicles entered the intersection first and whether the driver of the bus or the driver of the automobile or both were negligent presented a question of fact for the jury. All drivers of motor vehicles are chargeable with the knowledge that a street intersection is a place of danger, for it frequently happens that near such intersections two vehicles proceeding toward it at right angles to each other are desirous of occupying the same space in the intersection at the same time, and according to the laws of physics such joint occupancy is impossible. Drivers of vehicles must learn that even a theoretical "right of way" vested in them at the time is not a command to proceed but only a qualified permission to proceed with due caution. It does not absolve them from the duty of stopping if such stopping is under the circumstances necessary to prevent a collision with another vehicle or injury to any person or persons. We said in *Galliano v. East Penn*

---

* Sweet, the driver, was rendered unconscious by the crash and had no recollection of the situation immediately preceding the accident.

*Electric Co.,* 303 Pa. 498 at 503, 154 A. 805: "It is the duty of the driver of a street car or a motor vehicle at all times to have his car under control, and having one's car under control means having it under such control that it can be stopped before doing injury to any person in any situation that is reasonably likely to arise under the circumstances". The driver of the bus involved in this accident did not have it "under control" as we thus defined that phrase. It was his duty to be on the alert against what happened here, for such alertness on his part *could* have prevented this collision. The court's refusal to enter judgment n.o.v. for the defendant was proper.

The court was also justified in refusing to take off the compulsory non-suit in the case of Samuel E. Sweet, the driver of the automobile. The inference as to his negligence is inescapable. He was chargeable with knowledge that any vehicle approaching on his right had the right of way and that he was near a place of danger. Had Sweet been vigilant he would have seen the on-coming bus, for he had a view to the west which brought the well-lighted bus within the range of his vision. Had he seen it, both the law and common prudence required that he yield the right of way to it. If Sweet did not see the bus approaching it was because of his inattentiveness, and inattention in such a situation is negligence. If he saw it and took a chance "beating it to the intersection" he was negligent. Such an attempt ranks with attempts of automobiles to "beat passenger trains to a grade crossing", which attempts have met with disaster often and with judicial condemnation always. We have heretofore said that "the consequences of such temerity cannot be cast upon a defendant" in an action of trespass. See *Hawk et ux. v. Pennsylvania Railroad,* 307 Pa. 214, 221, 160 A. 862.

The judgments are affirmed.