Commonwealth Trust Company of Pittsburgh, Admr., Appellant, *v.* Carnegie-Illinois Steel Company et al.

Argued October 1, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*John E. Evans, Jr.,* with him *Henry A. Bergstrom* and *Evans, Evans & Spinelli,* for appellant.

*Artemas C. Leslie,* with him *McCloskey, Best & Leslie,* for John F. Casey Company, appellee.

*Ira R. Hill,* with him *Reed, Smith, Shaw & McClay,* for Carnegie-Illinois Steel Corporation, appellee.

OPINION BY MR. JUSTICE PATTERSON, November 26, 1945:

This is an action in trespass by the Commonwealth Trust Company of Pittsburgh, administrator of the estate of Marcus Meyer, deceased, appellant, against Carnegie-Illinois Steel Company, appellee, to recover damages for the death of said decedent by electrocution while engaged in construction work upon the premises of appellee. John F. Casey Company was brought in as additional defendant by the Carnegie-Illinois Steel Company. This appeal is from the refusal of the court below to remove a compulsory nonsuit entered after appellant presented its evidence intended to establish negligence on the part of the appellees.

In 1943 Carnegie-Illinois Steel Company, one of the appellees, was engaged in enlarging its Homestead plant for the Defense Plant Corporation. A new open hearth furnace was to be constructed and a ramp for an inclining plane to reach the floor of the open hearth furnace was being prepared. The contract for this work was let to the Swindell-Dressler Corporation which, in turn, sublet construction of the concrete foundation and piers to John F. Casey Company. Decedent, Marcus Meyer,

was a carpenter foreman of the sub-contractor. It was necessary for decedent to work in close proximity to a high tension electric line carrying 6600 volts, constructed over the site of the proposed ramp owned and under the exclusive control of Carnegie-Illinois Steel Company.

John F. Casey Company began excavating January 19, 1944, using a large crane with a shovel attached. Realizing the danger of using a 60' long boom on its crane, the boom was shortened to 45'. North of the excavation was a railroad track, on which the earth removed by the crane was deposited to make a roadway for trucks used in carrying away excavated material. The high tension wires were strung from a generator station to a steel tower west of the site of the excavating. The tower was 54'9". From this point the wires were extended easterly to a wooden pole on which they were fastened 42'8" above the ground, and then in an easterly direction to another steel tower. This steel tower, the height of which was not given, was considerably higher than the wooden pole. The location of the wires had not been changed, either by Carnegie-Illinois Steel Company or anyone else. The site of the excavation was a distance of 7' from a point directly under the wires at the easterly end and 17' at the westerly end. All the employees, including Meyer, knew of the danger of the high tension wires. Continued warnings were given and the men were advised to be careful. They were informed regarding the danger of coming in contact with the crane or any part thereof if a current should happen to travel from the wires to the crane. They were warned of the danger inherent in bringing the crane into close proximity with the electrically charged wires and the possibility of the current being arced to the crane.

On January 21, the day of the accident, while engaged in excavating, the crane picked up three railroad ties which it dropped upon the roadway to the right of the excavation by direction of one Petruzio, another

foreman. Meyer then signaled McLean, the crane operator, to again pick up the ties and convey them to the left,—obviously for the purpose of removing an obstruction in said roadway. This operation required the movement of the boom toward the wires. At Meyer's signal the movement of the boom was stopped. He then placed his hands on the bucket to turn it so that the railroad ties could be dropped outside the excavation. Between five and ten seconds later a flash was seen from the wires to the tip of the boom and Meyer was electrocuted. The evidence does not establish that any contact was made with the wires. The court below found that the electric current arced from the wires to the boom. There is ample testimony to support such an inference. At the conclusion of appellant's part of the case, intended to establish appellee's liability, the trial judge held decedent guilty of contributory negligence as a matter of law and entered a compulsory nonsuit, relying upon *Pfahler v. Pennsylvania Power & Light Company*, 351 Pa. 287. This appeal is from the refusal of the court en banc to remove the nonsuit.

". . . the duty of those handling electricity of high voltage is the highest degree of care practicable": *Ashby v. Philadelphia Electric Company*, 328 Pa. 474, 478; *Hawk v. Pennsylvania Railroad*, 307 Pa. 214, 220. A company using such a dangerous agency as high voltage electricity is bound to use the highest degree of care to avoid "injury to every one who may be lawfully in proximity to its wires and liable to come accidentally or otherwise in contact with them": *Fitzgerald v. Edison Electric Illuminating Company*, 200 Pa. 540, 543. "When human life is at stake the rule of due care and diligence requires everything that gives reasonable promise of its preservation to be done regardless of difficulties or expense": 20 R. C. L. 25. See *Hawk v. Pennsylvania Railroad*, supra. Appellant adduced evidence to show that the danger created in the instant case could

have been eliminated by appellee by raising the wires, and that this could have been done at an approximate cost of not more than $200. See *Geroski v. Allegheny County Light Company,* 247 Pa. 304, 307. Appellee company, however, did nothing to eliminate the dangerous condition existing. That it knew of the danger is shown by the fact that it gave numerous warnings to the subcontractor and its employees. Clearly, there was sufficient evidence to present a question of fact for a jury on the issue of the company's negligence. See *MacDougall v. Pennsylvania Power & Light Company,* 311 Pa. 387, 393.

Appellee contends, however, that decedent was guilty of contributory negligence as a matter of law and, therefore, the nonsuit was proper. This contention is based upon the fact that, notwithstanding knowledge of the danger of the high voltage wires, Meyer directed the crane operator to deposit three railroad ties to the left of the excavation. It is argued that by directing the boom, his act brought it in contact with the wires, or in close proximity thereto, and by placing his hands upon the shovel of the crane with full knowledge that should an electric current go through the crane he would receive the full force of the same, and these negligent acts were the proximate cause of his death.

*Ashby v. Philadelphia Electric Company,* supra, relied upon by appellant, is distinguishable. Decedent was engaged in the performance of his duties about a crane. The boom had been swung to within a foot and a half from high tension wires. Decedent's duty required that he guide into position the 1000-pound girder being lowered into place by the boom. He was so engaged when electricity arced from the wires to the boom and caused his death. He was in no way responsible for the act of the crane operator as was Meyer in the instant case. He had no authority to direct the crane operator or any part of the operation. In *Fitzgerald v. Electric Illuminating*

*Company*, supra, decedent, a painter, was upon a roof in the furtherance of his business. He had placed a prop under certain dangerous wires. Shortly thereafter the prop fell and the wires hit decedent. The electric shock knocked him into the street causing injuries from which he subsequently died. The case is inapposite here because there was no proof of knowledge of the intensity of the electric current passing through the wires. To all intents and purposes they appeared well insulated, and the court held "whether the means he took were such as a prudent man should have taken is not so clear that it can be determined by the court."

Considering the record in the light most favorable to appellant and giving it the benefit of all inferences which might properly be deduced therefrom, decedent's contributory negligence is so clear that there is no room for fair and reasonable persons to disagree and, therefore, it must be determined as a matter of law. Meyer knew the extent of the danger involved in directing the boom of the crane in close proximity to the wires, and the possibility that the current might arc into the boom while he was in contact with the same. Despite this knowledge he directed McLean, operator of the crane, to swing the boom toward the high tension wires and stop the same at a point dangerously near the wires and then placed his hands upon the iron bucket, and as a result caused his death by electrocution.

*Pfahler v. Pennsylvania Power & Light Company*, supra, was relied upon by the court below. In that case decedent attempted to hoist a tilly through a window in front of which passed high tension wires. The moving of one wooden tilly into the house was accomplished only by bumping the wires. Notwithstanding his knowledge of the danger, and his experience of having had made contact with the wires, he attempted to hoist a second tilly through the same window. The second, however, contained iron reinforcements. As it was maneu-

vered through the window it struck the wires, as did the first, sending a current through the decedent. This Court held that the decedent, having had full knowledge of the danger, had, by persisting in the performance of an obviously dangerous act, been guilty of gross negligence. The Court said (p. 291) : "If the danger is 'so apparent as to enable the court to declare contributory negligence as a matter of law,' it will do so."

The court below properly refused to take off a nonsuit against Carnegie-Illinois Steel Company for the reason of contributory negligence on the part of the decedent, and against John F. Casey Company for the reason that the remedy against it was governed by the Workmen's Compensation Act.

Judgment affirmed.