Kaufman *v.* Pittsburgh Railways Company, Appellant, et al.

Argued September 30, 1949. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Con F. McGregor*, for appellant.

*Samuel Avins*, for appellee.

OPINION BY MR. JUSTICE JONES, November 14, 1949:
The plaintiff sued to recover damages for loss by fire to his merchandise, stock and fixtures in his men's clothing store at No. 1021 Fifth Avenue, Pittsburgh, due to the defendant company's alleged negligence in failing to maintain properly one of its electric transmission lines. The jury returned a money verdict for the plaintiff, the amount of which is not questioned. The

defendant filed motions for a new trial and for judgment n. o. v. The learned court below refused both motions and directed that judgment be entered on the verdict. The defendant took this appeal and assigns for error only the lower court's refusal of judgment n. o. v.

The appellant contends that the plaintiff failed to prove it negligent in respect of the causation of the fire and that the evidence shows the plaintiff to have been guilty of contributory negligence in connection therewith. All of the record evidence was adduced in the plaintiff's case; the defendant offered none. The manner in which the fire occurred is not disputed but only the responsibility for the cause.

At the time of the fire (May 8, 1945) and for twenty-five years preceding, the defendant maintained a transmission line along Fifth Avenue in the locality specified which carried electric current of 500 to 700 volts for feeding into the defendant's trolley power line from time to time. The transmission line was carried overhead on poles which were erected at intervals on the sidewalk at the curb line. The length of the line's suspension in front of the defendant's store was one hundred and sixty-seven feet, being the distance between the respectively adjacent poles. Because of its weight, the transmission line sagged between its points of suspension. In 1936, the plaintiff's predecessor in the business had had an overhead electric neon sign erected by suspension from the front of the store out over the sidewalk. When the transmission line was at rest, and not swaying from the force of the wind or other cause, there was a clearance between the line and the outer edges of the sign of from twelve to eighteen inches. The sign was constructed of metal and had its own ground wire which led down through the plaintiff's store to a basement water pipe. The plaintiff had had the sign inspected and overhauled in 1944. On the day of the fire, a windy day, the transmission line came in contact with the lower

outer edge of the sign, causing the electric current of the transmission line to short-circuit through the sign and down the ground wire through the plaintiff's store. When first noticed, the flame or sparks, which were shooting from the sign at the point of the line's contact, increased each time the power line was blown or swung against the metal edges of the sign. The flames spread to the building, then along the ground wire through the plaintiff's store, causing the fire and consequent loss for which the plaintiff sued. The testimony showed that the insulating wrapping around the transmission line had deteriorated from long exposure to the weather and that on either side of the line's place of contact with the sign the insulating wrapping was hanging down in shreds, some two to three inches in length. The line at the exact place of its contact with the sign could not be examined by the plaintiff's representative after the fire as the defendant had then covered that particular portion of the line with an encasing guard.

The plaintiff charged the defendant with negligence in its failure to maintain the line in a safe condition and in failing to inspect it at reasonable periods. In support of these allegations, the plaintiff called as a witness a concededly well-qualified expert in mechanical and electrical engineering of many years active experience who testified that the span of the transmission line's suspension in front of the plaintiff's place of business was unusual and not "ordinary good practice"; that this condition produced a heavy sag in the line of approximately five feet at the place in question which made it a comparatively easy matter for the line to be blown or swayed by the wind into any nearby structure. The expert further testified that the absence of insulating wrapping laid the rubber insulation of the line open to deterioration and to ready abrasion from swinging into and rubbing against the edges of the sign; and that the defective condition of the insulating wrapping of the

line was not of recent development but due to the wear and tear from exposure to the elements for "at least twenty-five years".

From the conditions so described, the logical inference was that the defendant failed to properly inspect at reasonable times either the construction or the condition of the transmission line. The duty of the defendant in such regard was ". . . not only to know the extent of the danger, but to use the very highest degree of care practicable to avoid injury to everyone who may be lawfully in proximity to its wires and liable to come accidentally or otherwise in contact with them": *Fitzgerald v. Edison Electric Illuminating Company,* 200 Pa. 540, 543, 50 A. 161; see also *Ashby v. Philadelphia Electric Company,* 328 Pa. 474, 478, 195 A. 887. The fact that the insulation on the transmission line had been defective and in bad condition for a long period of time and that the unusual sag in the line permitted it to be blown and rubbed against the sign were relevant and material evidences of the defendant's failure to discharge its duty in the premises. See *Fitzgerald v. Edison Electric Illuminating Company,* supra, at p. 544. Under the evidence in the case, the question of the defendant's liability was properly for the jury.

The question of the plaintiff's contributory negligence was likewise a matter for the jury. Whether the proximity to the transmission line (viz., eighteen inches) within which the plaintiff maintained its metal sign was negligence was not so certain and conclusive in the circumstances as to have justified the court in declaring the plaintiff guilty of contributory negligence as a matter of law. While the plaintiff was, of course, bound to know that more or less danger from electricity was inherent in the transmission line, he was not chargeable with as high a degree of knowledge as to the extent of the danger as was the company which maintained and operated the line. See *Fitzgerald v. Edison Electric Il-*

*luminating Company,* supra, at p. 543; also *Laudenslager v. Pennsylvania Power & Light Co.,* 312 Pa. 169, 172, 167 A. 778, and cases there cited. The sign had been constructed and erected by a competent and reliable contractor; its erection and maintenance complied with the requirements of the municipality's regulations in such regard; and the plaintiff had, moreover, caused it to be inspected and overhauled within the year. The question of the plaintiff's contributory negligence was for the jury; and the appellant makes no complaint as to the adequacy of the learned trial judge's submission of that question.

Judgment affirmed.