Robert KUBE, Administrator of the Estate of John Williams, Deceased, Appellant,

v.

BETHLEHEM STEEL CORPORATION.

No. 16782.

United States Court of Appeals
Third Circuit.

Argued Dec. 22, 1967.

Decided March 4, 1968.

Frank J. Kernan, Pittsburgh, Pa. (P. J. McArdle, Pittsburgh, Pa., on the brief), for appellant.

John David Rhodes, Pringle, Bredin, Thomson, Rhodes & Grigsby, Pittsburgh, Pa., for appellee.

Before BIGGS, McLAUGHLIN and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This appeal challenges the charge given to the jury in a negligence case. The jury returned a verdict for the defendant, Bethlehem Steel Corporation (Bethlehem) and the plaintiff, Kube, has appealed from the judgment for defendant entered on the verdict, alleging that the charge constitutes reversible error because of an included paragraph on "control of subcontractor's employees" and because of excluded paragraphs dealing with degree of care owed by suppliers of electricity.

The appellee Bethlehem's negligence allegedly caused the death by electrocution of appellant's decedent, John Williams. Williams was the employee of a subcontractor, Furnco, which Bethlehem had hired to reline a blast furnace. While in the process of tearing out the old lining with a jack hammer, Williams stopped and attempted to remove a light bulb that had burned out. The light bulb was enclosed in a metal protective hood attached to the rubber-covered socket on

the end of a long extension cord.[1] The portable light, supplied by Bethlehem, along with electricity, enabled Williams to work inside the furnace. In the contract with Furnco, Bethlehem agreed to furnish and maintain all lights. A plant rule of Bethlehem required that all such maintenance, including the changing of bulbs, be done under the supervision of Bethlehem's electricians. Bethlehem agreed to supply all the bulbs needed. The bulbs were supposedly kept under lock and were obtainable only upon request to an electrician. Williams nonetheless attempted to unscrew the burned-out bulb himself. By using a self-made screwdriver fashioned from a welding rod, Williams disengaged the metal protective shield and received the fatal shock apparently when he, or the screwdriver, came in contact with the exposed filaments of the broken light bulb.[2] Apparently, the current in the line, 110 volts (the voltage normally found in American homes), proved sufficiently fatal both because Williams' heavy perspiration made him an improved conductor and because the protective metal shield no longer served as a part of the grounding mechanism once Williams had disconnected it.

The controversy in this case involves two basic questions: (1) is Bethlehem liable for Williams' death because it did not perform a duty owed to Williams, the employee; and (2) is Bethlehem liable for Williams' death because it did not perform a special duty owed to all people in the area by the supplier of electricity. The appellant claims that an erroneous charge was made on the first question, and no charge was made on the second.

██ The allegedly erroneous charge concerns the duty owed by Bethlehem to employees of its subcontractor, Furnco.[3] As a general proposition, the owner of the premises discharges his duty to a subcontractor's employee by exercising "reasonable care. * * * [He] owes no statutory duty to the employee of a contractor * * * to instruct him as to the danger of the employment * *." Mathis v. Lukens Steel Company, 415 Pa. 262, 203 A.2d 482, 487 (1964). In other words, Bethlehem's duty toward Williams was not the same as its duty toward its own employees, Moushey v. United States Steel Corporation, 374 F.2d 561, 566 (3d Cir. 1967).[4] As an exception to the above rule, the "Pennsylvania courts have recognized that the employer [of the subcontractor] should be liable where he has retained control of some part of the work * * * and his failure to exercise that control with reasonable care causes harm to others." Spinozzi, etc. v. E. J. Lavino and Company, 243 F.2d 80, 82–83 (3d Cir. 1957).

██ Appellant's argument is that this case was a proper one to charge the jury with the issue of control. We do not agree. The evidence in this record shows that Bethlehem retained some degree of control over the furnishing of temporary lighting, and that this agreed-to electrical service was controlled by the general

---

1. The light was apparently in perfect repair except for the 200 watt bulb which burned out. The extension cord contained three wires, the third serving as a ground and connected to the metal protective cover. When plugging in the cord, the ground plug would make contact first since it was longer than the plugs that carried the current.

2. It is not clear whether the bulb cracked when it burned out, or whether it was broken by Williams' attempting his repairs. It does appear that it didn't break while still burning.

3. The paragraph that appellant points to was:

"You are instructed that Bethlehem Steel Corporation had no duty to instruct, control or supervise the employees of an independent contractor. Rather, it was the duty of Furnco to instruct and control its own employees. If Bethlehem informed Furnco of its safety rule and the dangers involved in disregarding it, Bethlehem has fulfilled its duty in this regard. A failure by Furnco to pass this information along to its own employees would not constitute negligence on the part of Bethlehem."

4. The trial judge charged the jury correctly on this point.

Bethlehem safety rule that all electrical maintenance, including the changing of bulbs, should be performed only by Bethlehem electricians. The evidence also showed that Bethlehem had a comprehensive system for controlling access to light bulbs, and providing electrician service when bulbs needed changing. But other than through these safety rules and procedures, there was no evidence of any additional control exercised by Bethlehem over Furnco employees.[5] Several other paragraphs of the trial judge's charge dealt at length with the issues of negligence liability raised by the safety rules, their adequate enforcement before the accident, their adequate communication to Furnco, their enforcement after the accident, etc. These paragraphs of the charge adequately covered the relevant evidence in this case and presented to the jury for decision the proper element of "control" that was present on this record: the enforcement of electricity safety rules. See Gerhart v. Henry Disston and Sons, Inc., 290 F.2d 778, 795 (3d Cir. 1961); Thiringer v. Barlow, 205 F.2d 476, 477 (10th Cir. 1953).

The appellant's second contention is that the trial judge failed to charge the jury properly on the duty owed by Bethlehem as a supplier of electricity. The general rule in Pennsylvania is that the supplier of electricity owes the "highest degree of care" to all parties who might be harmed.[6] Although the vast majority of such cases involve electrocution by high voltage,[7] the general negligence rule that "care must be commensurate with the danger"[8] would probably make a standard of "highest degree of care" applicable under Pennsylvania law to Bethlehem in this case.[9]

---

5. This is not a case where the "control" exception was applicable in an F.E.L.A. suit against Bethlehem, e. g., Moushey v. United States Steel Corporation, supra. Nor does the record show the factors of control mentioned in Spinozzi, etc. v. E. J. Lavino and Company, supra.

6. See e. g., Herron v. City of Pittsburg, 204 Pa. 509, 54 A. 311 (1903); Ashby v. Philadelphia Electric Co., 328 Pa. 474, 195 A. 887 (1938); Commonwealth Trust Co. of Pitts. v. Carnegie-Illinois Steel Co., 353 Pa. 150, 44 A.2d 594 (1945); Kaufman v. Pittsburgh Rys. Co., 363 Pa. 96, 69 A.2d 90 (1949); Cooper v. Heintz Manufacturing Company, 385 Pa. 296, 122 A.2d 699 (1956); Stark v. Lehigh Foundries, Inc., 388 Pa. 1, 130 A.2d 123 (1957); Skoda v. West Penn Power Company, 411 Pa. 323, 191 A.2d 822 (1963).

7. Of all the cases cited or discovered by the court only Daltry v. Media Electric Light, Heat & Power Co., 208 Pa. 403, 57 A. 833, 835 (1904) seems to involve "household" current ("electricity * * * of sufficient voltage for lighting purposes * * *"). Fitzgerald v. Edison Electric Illuminating Co., 200 Pa. 540, 50 A. 161 (1901), the original Pennsylvania authority, is not clear as to the voltage involved; but the approach in these cases, decided when electricity was new in households, may be unfitted to today's electronic world. See e. g., Emery v. City of Philadelphia, 208 Pa. 492, 57 A. 977, 978 (1904): "those using this new and dangerous agent are bound to the very highest degree of care practicable."

8. See e. g., Daltry v. Media Electric Light, Heat & Power Co., supra, which shows how the rule of care on electricity evolved. The Pennsylvania rule, emphasizing that the degree of harm is usually unknown to the potential victim, accordingly extends the "highest degree" rule to suppliers of normally harmless lines that suddenly are charged with high voltage: e. g., Sebring v. Bell Telephone Co., 275 Pa. 131, 118 A. 729 (1922); Fox v. Keystone Telephone Co., 326 Pa. 420, 192 A. 116, 110 A.L.R. 1182 (1937). It is not clear under the rule whether the fact that high voltage is involved creates the heightened duty of care or whether the fact that someone is injured seriously by normally harmless lines raises the degree of care required. Cf. Commonwealth Trust Co. of Pitts. v. Carnegie-Illinois Steel Co., supra. Cases in the category of Sebring and Fox are the most analogous to the present appeal.

9. Since we do not need to decide this narrow question of Pennsylvania law under our view as expressed below, we also do not explore fully appellee's argument that the Pennsylvania electricity rule applies only to "suppliers" and not to intermediate users of electricity. Cases such as Commonwealth Trust Co. of Pitts. v. Carnegie-Illinois Steel Co., supra; Stark v. Lehigh Foundries, supra; and Cooper

But before we can rule that such a charge should have been given and its absence requires a new trial, it must be clear that the evidence on this record makes Bethlehem's degree of care in this respect material to the proper decision to be made by the jury and that refusal to correct any error in this regard is "inconsistent with substantial justice." See F.R.Civ.P. 61.

At the outset, as the judge correctly pointed out, there was no contention that the extension-cord light involved was in any way defective.[10] The controversy that potentially contains a question of "highest degree of care" focuses on the instructions, warnings, and practices relating to Bethlehem's safety rules with regard to such lights. As noted above, these safety rules required a Bethlehem electrician to change all light bulbs, and required all persons to summon such an electrician by blowing on a nearby whistle or reporting to his foreman. A rule also required all sheds containing bulbs and electrical supplies to be locked when unmanned; no Bethlehem electrician was allowed to give bulbs to other persons.

There was no evidence that Williams obtained a light bulb that he attempted to substitute for a burned-out one. A whistle was located sixty feet from the place of the accident; an electrical maintenance building was 170 feet away. Rather, the evidence showed that Williams used an improvised screwdriver in an attempt to remove the burned-out bulb, and that he failed to take such a simple precaution as unplugging the extension cord. As the evidence showed, and the trial judge correctly charged, a substantial issue of contributory negligence was present[11] and the record presented a question whether, even if Bethlehem had violated its safety rules on some occasions, any such violation by Bethlehem was a proximate cause of Williams' death.[12]

On this record, therefore, we can not say that the trial judge's failure to point out that suppliers of electricity owed the highest duty of care was sufficiently prejudicial to warrant reversal,[13] particularly in light of the charge as a whole.[14] See F.R.Civ.P. 61. The "electricity" standard was relevant only to the controversy over the safety rules, apparently on the theory that laxity in the past enforcement of such rules encouraged Williams to undertake the fatal repairs he attempted. Such a controversy was adequately submitted to the jury by the several paragraphs of the charge dealing

---

v. Heintz Manufacturing Company, supra; would seem to negate this contention at least for users of high-voltage electricity.

10. Cf. cases involving faulty equipment of "suppliers" such as inadequate insulation, e. g., Fitzgerald v. Edison Electric Illuminating Co., supra; Markovich v. Jefferson Coal & Coke Corporation, 146 Pa.Super. 108, 22 A.2d 65 (1941).

11. Even in face of the "highest degree of care" electricity rule, contributory negligence remains a defense in Pennsylvania, e: g., Pfahler v. Pennsylvania Power & Light Co., 351 Pa. 287, 40 A.2d 692 (1945); Commonwealth Trust Co. of Pitts. v. Carnegie-Illinois Steel Co., supra; Rank v. Metropolitan Edison Co., 370 Pa. 107, 87 A.2d 198, 55 A.L.R.2d 119 (1952).

12. See e. g., Jowett v. Pennsylvania Power Company, 383 Pa. 330, 118 A.2d 452 (1955) where defendant's negligence in

a high voltage accident (7,200 volts) was nonetheless not the proximate cause of the electrocution of a television antenna repairman.

13. E. g., Mihalic v. Texaco, Incorporated, 377 F.2d 978, 982 (3d Cir. 1967).

14. Seaboard Air Line Ry. v. Padgett, 236 U.S. 668, 672, 35 S.Ct. 481, 59 L.Ed. 777 (1915); Ridgway National Bank v. North America Van Lines, Inc., 326 F.2d 934, 936 (3d Cir. 1964). As to the failure to give plaintiffs' Requests for Charge 1 and 4 as worded, this court has repeatedly stated that "It is not prejudicial error to refuse to give a requested instruction even though it be an accurate statement of the law, if the issues have been fairly and correctly covered in the general instructions given." Gerhart v. Henry Disston and Sons, Inc., supra, 290 F.2d at 795; see Lecklikner v. Transandina Compania Naviera, S. A., 390 F.2d 179 (3d Cir. Feb. 8, 1968).

with the safety rules and the enforcement practices and by those covering the problem of whether such attempted repairs involved a danger sufficiently known to Williams or the subcontractor, Furnco. As the "highest degree of care" electrical rule operates in Pennsylvania, the supplier's duty arises because people generally are not charged with knowledge of the decree of harm that may be caused by electricity although they may know of some danger.[15] The trial judge's charge as a whole therefore covered those elements of the "electricity" standard of duty that were material in light of all the evidence on this record.

For the reasons stated above, the judgment entered by the District Court will be affirmed.

15. See e. g., Stark v. Lehigh Foundries, supra; Kaufman v. Pittsburgh Rys. Co., supra; Brillhart v. Edison Light & Power Co., 368 Pa. 307, 82 A.2d 44 (1951).